# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Atlantic Casualty Insurance Company,<br>a North Carolina Company,<br><br>Plaintiff,<br><br>v.<br><br>Viking Roofing & Remodeling, LLC,<br>a Minnesota Limited Liability<br>Corporation,<br><br>James England, an individual, residing<br>in Minnesota,<br><br>Benny's Roofing LLC, a Minnesota<br>Limited Liability Corporation,<br><br>Benedicto Palchizaca Tenezaca aka<br>Benedicto Penezaca, an individual,<br>residing in Minnesota,<br><br>Twin Cities Roofing and Supply, LLC,<br>a Minnesota Limited Liability<br>Corporation,<br><br>Cielo Partners, LLC, a Minnesota<br>Limited Liability Corporation, and<br><br>Cielo Partners II, LLC, a Minnesota<br>Limited Liability Corporation,<br><br>Defendants. | Court File No.:<br>Judge:<br>Case Type: Declaratory Judgment<br><br><br><br>**PLAINTIFF ATLANTIC<br>CASUALTY INSURANCE<br>COMPANY'S<br>COMPLAINT FOR<br>DECLARATORY<br>JUDGMENT** |

---

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY**, by

and through its attorneys, Aaron M. Simon and MEAGHER + GEER, PLLP, files this

Complaint, ("Complaint"), seeking a declaration of the rights, interests, duties, and

responsibilities of the parties to this lawsuit under certain policies of insurance, as more specifically described below (*see Section III below*), issued to Defendants Viking Roofing & Remodeling LLC and/or James England; and Defendants Benny's Roofing LLC and/or Benedicto Penezaca, and state and allege as follows:

## I.      PARTIES

1.      Plaintiff Atlantic Casualty Insurance Company ("ACIC") is an insurance company organized under the laws of the state of North Carolina with its principal place of business located at 400 Commerce Court, Goldsboro, North Carolina 27534.

2.      Defendant Viking Roofing & Remodeling, LLC, is an inactive Minnesota Limited Liability Corporation with its principal place of business, Registered Office Address, and Principal Executive Office Address located at 2907 – 185th Lane N.E., East Bethel, Minnesota 55092.

3.      Defendant James England is an individual, a Minnesota resident, and the owner of Viking. (Hereinafter Defendant Viking Roofing & Remodeling, LLC and Defendant James England will be collectively referred to as "Viking").

4.      Upon information and belief Defendant James England resides at 2907 – 185th Lane N.E., East Bethel, Minnesota 55092

5.      Defendant Benny's Roofing LLC, is a Minnesota Limited Liability Corporation with its principal place of business and Registered Office Address located at 3500 11th Ave South, Minneapolis, Minnesota 55407; and its Principal Executive Office Address located 2050 Angell Rd Sunfish Lake, Minnesota 55118–5511.

**6.** Defendant Benedicto Palchizaca Tenezaca aka Benedicto Penezaca, is an individual, a Minnesota resident, and the owner of Benny's. (Hereinafter Defendant Benedicto Palchizaca Tenezaca aka Benedicto Penezaca and Defendant Benny's Roofing LLC shall collectively be referred to as "Benny's".)

**7.** Upon information and belief Defendant Benedicto Palchizaca Tenezaca aka Benedicto Penezaca resides at 2050 Angell Rd Sunfish Lake, Minnesota 55118–5511

**8.** Twin Cities Roofing and Supply, LLC ("TCRS") is a Minnesota Limited Liability Corporation with its principal place of business, Registered Office Address, and Principal Executive Office Address located at 4550 Main Street N.E., Minneapolis, Minnesota 55421; and TCRS' manager is Gerry Stock.

**9.** Cielo Partners, LLC, is a Minnesota Limited Liability Corporation with its principal place of business, Registered Office Address, and Principal Executive Office Address located at 3601 - 18th Street South, Ste. 103, St. Cloud, Minnesota 56301. Cielo Partners, LLC's manager is Jeffrey Drown.

**10.** Cielo Partners II, LLC, is a Minnesota Limited Liability Corporation with its principal place of business, Registered Office Address, and Principal Executive Office Address located at 3601 - 18th Street South, Ste. 103, St. Cloud, Minnesota 56301. Cielo Partners II, LLC's manager is Jeffrey Drown.

**11.** ACIC, Viking, Benny's, TCRS, Cielo Partners, LLC, and Cielo Partners II, LLC shall hereinafter in this Complaint be referred to as the "Parties".

## II.   <u>JURISDICTION, VENUE, & NATURE OF ACTION</u>

**12.** This Complaint is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

**13.**     This Court has subject matter jurisdiction over the Parties and this action under 28 U.S.C. § 1332 (Diversity of Citizenship), and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment).

**14.**     Plaintiff is a North Carolina company and all the Defendants are Minnesota Limited Liability companies or Minnesota residents.

**15.**     Excluding interest and costs the amount in controversy in this matter exceeds $75,000.

**16.**     This Court has personal jurisdiction over the individual Defendants James England and Benedicto Palchizaca Tenezaca aka Benedicto Penezaca because they are both residents of the State of Minnesota.

**17.**     This Court has personal jurisdiction over Viking Roofing & Remodeling, LLC; Benny's Roofing, LLC; TCRS; Cielo Partners, LLC; and Cielo Partners II, LLC because they are all Minnesota Limited Liability Corporations located and based in Minnesota.

**18.**     Venue is proper in the United States District Court for the District of Minnesota under 28 U.S.C. § 1332 (Diversity) and 28 U.S.C. § 1391 (Venue), because all the Defendants are residents of Minnesota, and/or a substantial part, if not all, of the events giving rise to the claims and issues involved in this matter occurred in Minnesota.

**19.**     All parties with an interest in the outcome of this matter have been made a party to this action.

20.     This Complaint seeks an order from the Court declaring the rights, obligations, responsibilities, duties, and interests of ACIC and the Parties with respect to the duty of ACIC to defend, the scope of coverage provided by ACIC if any, and ACIC's duty to indemnify Viking and Benny's in connection with allegations and claims made, (including but not necessarily limited to allegations and claims made in lawsuits and arbitrations), related to the construction of the Cielo apartment complexes located at 6051 University Avenue N.E. in Fridley, Minnesota, and 5951 University Avenue N.E. in Fridley, Minnesota. (Hereinafter these apartment complexes will collectively be referred to as the "Cielo Apartment Complexes".)

21.     An actual controversy of a judicial nature exists between the Parties with respect to their respective rights, obligations, responsibilities, duties, and interests under the ACIC Policies referenced below. (*See Section III below*).

22.     A declaratory judgment would terminate the uncertainty and controversy with respect to the Parties' rights, obligations, responsibilities, duties, and interests under the ACIC Policies referenced below. (*See Section III below*).

### III.     POLICIES

23.     The following ACIC insurance policies were issued to Benny's: policy L072001128 (with a policy period 5/15/2013 to 5/15/2014); policy L072001128-1 (with a policy period 5/15/2014 to 5/15/2015); policy L072001128-2 (with a policy period 5/15/2015 to 5/15/2016); policy L072001453 (with a policy period 5/15/2016 to 5/15/2017); policy L072001453-1 (with a

policy period 5/15/2017 to 5/15/2018); L072001453-2 (with a policy period 5/15/2018 to 5/15/2019); and policy L072001453-3 (with a policy period 5/15/2019 to 5/15/2020). (*See* **Exhibits 1-7** attached to this Complaint.)

24.    The following ACIC insurance policies were issued to Viking: policy L072001268 (with a policy period 8/01/2014 to 8/01/2015); policy L072001268-1 (with a policy period 8/01/2015 to 8/01/2016); policy L072001268-2 (with a policy period 8/01/2016 to 8/01/2017); policy L072001498 (with a policy period 9/08/2016 to 9/08/2017); and policy L072001498-1 (with a policy period 9/08/2017 to 9/08/2018). (*See* **Exhibits 8-12** attached to this Complaint.)

25.    Even though the ACIC insurance policy issued to Viking, policy number L072001268-2, had a policy period of 8/01/2016 to 8/01/2017, this policy was cancelled on September 8, 2016.

26.    The policies identified in the preceding paragraphs (paragraphs 23 - 25 of this Complaint) shall hereinafter collectively be referred to as the "ACIC Policies."

27.    All of the ACIC Policies referenced above contain a limit of liability of $1,000,000 each.

28.    All of the ACIC Policies referenced above are occurrence-based insurance policies.

29.    All of the ACIC Policies referenced above have a $1,000 per claim deductible for property damage.

**30.** All of the ACIC Policies referenced above were purchased in Minnesota.

**31.** All of the ACIC Policies referenced above contain Roofing Limitation endorsement AGL-009 01 11, AGL-132 03-13, AGL-132 08-16, or AGL-132 09-18.

**32.** AGL-009 01 11 states:

> This insurance does not apply to any claim, loss, costs or expenses for "bodily injury," "property damage" or "personal and advertising injury" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

**33.** AGL-132 03-13 states:

> This insurance does not apply to any claim, loss, costs or expense due to "property damage" arising out of rain, snow, hail or any combination of these if a suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has not been properly secured in place. This cover is to be put into place any time any insured leaves the job site. Relative to roofing operations, the use of tar paper and/or felt paper does not constitute suitable waterproof temporary covering.

> Further, this insurance does not apply to any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on material, torch or heat

applications, hot membrane roofing or any membrane roofing system requiring heat for application.

34.     AGL-132 08-16 states:

This insurance does not apply to any claim, loss, costs or expense due to "property damage" arising out of rain, snow, hail or any combination of these if a suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has not been properly secured in place. This cover is to be put into place any time any insured leaves the job site. Relative to roofing operations, the use of tar paper and/or felt paper and/or underlayment and/or synthetic underlayment does not constitute suitable waterproof temporary covering.

Further, this insurance does not apply to any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

35.     AGL-132 09-18 states:

This insurance does not apply to any claim, loss, costs or expense due to "property damage" arising out of rain, snow, hail or any combination of these if a suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has not been properly secured in place. This cover is to be put into place any time any insured leaves the job site. Relative to roofing operations, the use of tar paper and/or felt paper and/or underlayment and/or synthetic underlayment does not constitute suitable waterproof temporary covering.

Further, this insurance does not apply to any claim, loss, costs or expense for "bodily injury," "property

damage" or "personal and advertising injury" that results from any operations performed by any insured, from initial inspection and pre-installation work to ongoing operations and including completed operations, where any insured is hired, loaned, leased or contracted to install and/or repair a roof involving any hot tar, wand, sprayed or sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application. This endorsement applies to any "bodily injury," "property damage" or "personal and advertising injury," including, but not limited to, water-damage resulting from such operations whether or not the injury or damage arises from or is caused by the heat application.

**36.** Hereinafter the AGL-009 01 11, AGL-132 03-13, AGL-132 08-16, and AGL-132 09-18 Roofing Limitation endorsements shall collectively be referred as the "Roofing Limitation Endorsements".

**37.** ACIC policy L072001128 issued to Benny's with a policy period 5/15/2013 to 5/15/2014, contains exclusion AGL-054 10 10, which states:

**EXCLUSION — MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY**

This insurance does not apply to claims, loss, costs or expense arising from any actual or alleged:

(**1**) "bodily injury," "property damage" or "personal and advertising injury;"

(**2**) damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;

(**3**) to any loss, cost or expense, including but not limited to fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up,

remove, contain, treat, detoxify or neutralize "organic pathogens," or

(**4**) to any litigation or administration procedure in which any insured may be involved as a party,

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury," "property damage," "personal and advertising injury," loss, costs or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens," whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol or scent.

All other terms and conditions remain unchanged.

38.    Excluding ACIC policy L072001128 issued to Benny's with a policy period 5/15/2013 to 5/15/2014, all of the other ACIC Policies referenced above (ACIC policy numbers: L072001128-1 (policy period 5/15/2014 to 5/15/2015); L072001128-2 (policy period 5/15/2015 to 5/15/2016); L072001453 (policy period 5/15/2016 to 5/15/2017); L072001453-1 (policy period 5/15/2017 to 5/15/2018); L072001453-2 (policy period 5/15/2018 to 5/15/2019); L072001453-3

(policy period 5/15/2019 to 5/15/2020); L072001268 (policy period 8/01/2014 to 8/01/2015); L072001268-1 (policy period 8/01/2015 to 8/01/2016); L072001268-2 (policy period 8/01/2016 to 8/01/2017); L072001498 (policy period 9/08/2016 to 9/08/2017); and L072001498-1 (policy period 9/08/2017 to 9/08/2018)), contain exclusion AGL-054 03 13, which states:

**EXCLUSION - MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN**

**LIABILITY**

This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:

1. "bodily injury", "property damage", "personal and advertising injury";

2. damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

3. fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens;" or

4. litigation or administration procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense including but not limited to fines, penalties and

attorney fees, arising out of or related to any form of "organic pathogens', whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release, or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious.

This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol, or scent.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**39.** Hereinafter the AGL-054 10 10 and AGL-054 03 13 exclusions referenced and cited above shall collectively be referred to as the "Mold Exclusions".

**40.** All the ACIC Policies issued to Benny's and Viking referenced above contain COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01, and thus have the following language contained in the policies:

**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
**(1)** The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\*\*\*

## 2. Exclusions

This insurance does not apply to:

\*\*\*

## b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. …

\*\*\*

## j. Damage To Property

"Property damage" to:

\*\*\*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*\*\*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.
**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\*\*\*

**21.** "Your product":
**a.** Means:
    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        **(a)** You;
        **(b)** Others trading under your name; or
        **(c)** A person or organization whose business or assets you have acquired; and
    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or product.

**b.** Includes
    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
    **(2)** The providing of or failure to provide warnings or instructions.

\*\*\*

**22.** "Your work":
    **a.** Means:
        **(1)** Work or operations performed by you or on your behalf; and
        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
**(2)** The providing of or failure to provide warnings or instructions.

**41.**    ACIC policy L072001128 issued to Benny's with a policy period 5/15/2013 to 5/15/2014 contains AGL-048 10 10 which states:

**EXCLUSION — BODILY INJURY AND/OR PROPERTY DAMAGE - CLAIMS IN PROCESS**

The following exclusion is added to **2. Exclusions** under **SECTION I - COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

This insurance does not apply to:
**1.** any loss or claim for damages arising out of or related to "bodily injury" or "property damage,' whether known or unknown:
**a.** which first occurred prior to the inception date of this policy; or
**b.** which is, or is alleged to be, in the process of occurring as of the inception date of this policy.
**2.** any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage," unless any insured can demonstrate this endorsement does not apply.

**42.**    Excluding ACIC Policy L072001128 issued to Benny's with a policy period 5/15/2013 to 5/15/2014, all of the other ACIC Policies referenced above (ACIC policy numbers L072001128-1 (policy period 5/15/2014 to

5/15/2015); L072001128-2 (policy period 5/15/2015 to 5/15/2016); L072001453

(policy period 5/15/2016 to 5/15/2017); L072001453-1 (policy period 5/15/2017

to 5/15/2018); L072001453-2 (policy period 5/15/2018 to 5/15/2019);

L072001453-3 (policy period 5/15/2019 to 5/15/2020); L072001268 (policy

period 8/01/2014 to 8/01/2015); L072001268-1 (policy period 8/01/2015 to

8/01/2016); L072001268-2 (policy period 8/01/2016 to 8/01/2017); L072001498

(policy period 9/08/2016 to 9/08/2017); and L072001498-1 (policy period

9/08/2017 to 9/08/2018)), contain AGL-131 03-13 which states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**EXCLUSION - CLAIMS IN PROCESS**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to 2. Exclusions under **SECTION I - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.
This insurance does not apply to:
    1. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown:
        a. which first occurred prior to the inception date of this policy; or
        b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.

    2. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage,"  unless any insured can demonstrate this endorsement does not apply.

The following exclusion is added to **2. Exclusions** under **SECTION I — COVERAGES,**
**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**:

This insurance does not apply to:
    1. Any loss or claim for damages arising out of or related to "personal and advertising injury," whether known or unknown:
        a. which first occurred prior to the inception date of this policy; or
        b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.
    2. Any loss or claim for damages arising out of or related to "personal and advertising injury," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "personal and advertising injury," unless any insured can demonstrate this endorsement does not apply.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

**43.**     The ACIC policies issued to Viking, policy numbers L072001268 (policy period 8/01/2014 to 8/01/2015), L072001268-1 (policy period 8/01/2015 to 8/01/2016), and L072001268-2 (policy period 8/01/2016 to 8/01/2017), contain exclusion AGL-005 10/10 which states:

**EXCLUSION—   INDEPENDENT   CONTRACTORS   OR SUBCONTRACTORS**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claims, loss, costs or expense arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

44.     The ACIC policies issued to Viking, policy numbers L072001498

(policy period 9/08/2016 to 9/08/2017); and L072001498-1 (policy period

9/08/2017 to 9/08/2018) contain endorsement AGL-130 09 13 which states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**CONDITION - INDEPENDENT CONTRACTORS AND SUBCONTRACTORS**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The classifications used in this policy containing the words "Contractors Subcontracted Work" apply to that portion of the operations performed for or on behalf of any insured by independent contractor(s) or subcontractor(s). There is no coverage for that portion of the operations performed for or on behalf of any insured by independent contractor(s) or subcontractor(s) unless Condition A or Condition B is met.

If Condition A or Condition B is not met, then this insurance does not apply to any claims, loss, costs or expense arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent

hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.
Condition A.

This insurance does not apply to any claim arising from subcontracted work unless the insured can demonstrate:

1) The independent contractor or subcontractor maintains insurance in force for his operations with at least the
following Limits of Liability:
        A. General Aggregate Limit (Other than Products Completed Operations) $1,000,000
        Products Completed Operations Aggregate Limit $1,000,000
        Each Occurrence Limit $1,000,000
        B. Or the limits provided by this policy, whichever are less; and

2) A hold harmless agreement in favor of you has been executed with the independent contractor or subcontractor, for the their negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the independent contractor or subcontractor; and

3) You are endorsed to the independent contractor's or subcontractors's  Commercial General Liability policy as an additional insured for the independent contractor or subcontractors negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of subcontractor, its agent or employee, or any third party under the control or supervision of the independent contractor or subcontractor; and

4) You will obtain Certificates of Insurance from each independent contractor or subcontractor with evidence verifying the requirements of paragraphs 1 and 3 above. These certificates must be kept on file for a minimum of
ten years.

Condition B.

If we verify operations were performed by independent contractor(s) or subcontractor(s) and they did not meet Condition A. we will use the total cost of work performed for you by such independent contractor or subcontractor as if it were payroll to calculate the appropriate premium for the specific classification based on our rates and rules in effect as of the inception date of the policy. It is your responsibility to pay any additional premium due.

45.     All other terms and clauses (including all endorsements and all exclusions) of the ACIC Policies referenced above and attached as exhibits to this Complaint are specifically incorporated herein by reference.

46.     Other terms and clauses of the ACIC Policies referenced above and attached as exhibits to this Complaint impose certain duties on Viking and Benny's and are specifically incorporated herein by reference.

## IV.     UNDERLYING FACTUAL ALLEGATIONS

47.     On or about June 1, 2014, Cielo Partners I ("CP I") and HMA Architects. Ltd. ("HMA") entered into a contract, pursuant to which HMA agreed to provide CP I with design and engineering services for the design and construction of The Cielo Apartment Complex, which consists of 101 apartment units in a four story building with at grade parking on the first level, located at 6051 University Avenue NE in Fridley, Minnesota. ("Cielo I").

48.     On or about August 30, 2014, CP I entered into a separate contract with Lyon Contracting, Inc. ("Lyon"), pursuant to which Lyon agreed to act as a general contractor and to select and hire subcontractors to construct Cielo I per certain plans and specifications.

49.     HMA started their work on Cielo I in January, 2014, and Lyon started its work on Cielo I on or about October 15, 2014.

50.     Lyon selected and hired subcontractors to construct Cielo I, including entering into a contract with Greenwald Roofing ("Greenwald") on or about January 26, 2015.

51.     Upon information and belief, it is believed that pursuant to a Plan of Merger effective March 27, 2019, Greenwald merged with Central Construction Company, LLC ("Central"), with Central becoming the surviving company; and at this same time or after this Central amended its name and continued its existence as Defendant TCRS.

52.     On or about March 12, 2015, Greenwald (now TCRS) entered into a subcontract with Viking for Viking to perform all roofing labor at Cielo I necessary to install a roofing system per certain plan documents, and that Viking's work area was described as 422 square feet of roof area.

53.     After Greenwald (now TCRS) and Viking entered into the contract described above, Viking entered into a subcontract with Benny's in which Benny's agreed to perform all or a portion of Viking's work on Cielo I.

54.     Greenwald (now TCRS), Viking, and Benny's performed their work at the Cielo Apartment Complexes between January 26, 2015, and February 4, 2016.

55.     CP I and CP II allege that Greenwald (now TCRS), Viking, and Benny's did not follow HMA's plans and specifications.

**56.**    Upon information and belief Viking and Benny's only performed work on Cielo I.

**57.**    Cielo I was substantially completed in January 2016.

**58.**    In August of 2017 a tenant in Unit 425 of the Cielo I apartment complex complained of an odor in the unit. Investigation ensued after this and as a result CP I made allegations of significant construction defects with the roof of the apartment complex, and corresponding moisture and/or mold issues.   More specifically CP I alleged that "there was moisture in the roof system designed by HMA and constructed by Lyon and Lyon's subcontractors."

**59.**    On or about July 11, 2016, Cielo Partners II ("CP II") and HMA entered into another contract pursuant to which HMA agreed to provide CP II with design and engineering services for the design and construction of The Cielo Phase II Apartment Complex, which consists of 101 apartment units located at 5951 University Avenue NE in Fridley "that is based on the prototype design of the Cielo Phase 1 project [with m]inor modifications [] to various unit types with additional changes to the center core of the facility."

**60.**    On or about July 21, 2016, CP II entered into a separate contract with Lyon, pursuant to which Lyon agreed to act as a general contractor and to select and hire subcontractors to construct Cielo II per certain plans and specifications.

**61.**    HMA started its work in March 2016, and Lyon started its work in July 2016.

**62.** Lyon selected and hired subcontractors to construct Cielo II.

**63.** Cielo II was substantially completed in September 2017**.**

**64.** CP I and CP II allege that during a May 6, 2019, inspection of the Roofs on Cielo I and on Cielo II, it was discovered that the roof on Cielo II allegedly had unacceptable levels of moisture and resultant moisture and/or mold damage.

**65.** Upon information and belief Viking and Benny's did not perform work on Cielo II.

**66.** CP I and CP II, the owners of the Cielo Apartment Complexes, commenced a lawsuit in Anoka County Minnesota State District Court titled *Cielo Partners, LLC, and Cielo Partners II, LLC v. HMA Architects, Ltd., Murray A. Mack, et al.*, State Court Case No.: 02-CV-18-7045 ("Cielo Lawsuit" – *See* **Exhibit 13 (Cielo Partners I LLC and Cielo Partners II Amended Complaint**).

**67.** CP I's and CP II's claims in the Cielo Lawsuit were based in Breach of Contract, Breach of Warranty, and Negligence.

**68.** Upon information and belief Viking and Benny's were never made parties to the Cielo Lawsuit.

**69.** Upon information and belief this lawsuit was partially settled in mid to late 2019 ("Cielo Partial Settlement").

**70.** TCRS, Greenwald, Central, Viking, and Benny's were not a party to the Cielo Partial Settlement.

71.     In the Cielo Partial Settlement, CP I and CP II reserved their claims against these parties (specifically including claims against Viking and Benny's), and any other entity or person that was not a party to the Cielo Partial Settlement.

72.     CP I and/or CP II also commenced an arbitration action in the American Arbitration Association against TCRS, Greenwald, Central, Viking, and Benny's titled *Cielo Partners, LLC, v. Twin Cities Roofing & Supply, LLC, Greenwald Roofing & Sheet Metal, LLC, Central Construction Company, LLC, Viking Roofing & Remodeling LLC, and Benny's Roofing LLC*, AAA Arbitration Case No.: 01-19-0002-3335, "Cielo Arbitration". (*See* **Exhibit 14 - Cielo Partners LLC Second Amended Demand for Arbitration**).

73.     CP I's and/or CP II's claims in the Cielo Arbitration were based in Breach of Contract, and Negligence.

74.     In both the Cielo Lawsuit and the Cielo Arbitration, CP I and/or CP II made allegations of defective roof design and/or installation that caused significant water damage and/or mold damage to the apartment building; and CP I and CP II allege they are entitled to over $8 Million in damages for the cost of replacing the roofing, repairing water damage, and diminution in value to the Cielo Apartment Complexes.

75.     Additionally, TCRS instituted a lawsuit in in Anoka County Minnesota State District Court against Viking & Benny's on or about March 17, 2020, titled *Twin Cities Roofing & Supply, LLC, v. Viking Roofing & Remodeling,*

*LLC and Benny's Roofing LLC* – "TCRS Lawsuit". (*See* **Exhibit 15 - Twin Cities Roofing & Supplies Summons and Complaint**).

76.     In the TCRS Lawsuit, TCRS made claims against Viking and Benny's deriving, arising, and/or flowing from the claims made against TCRS by CP I and CP II in the Cielo Lawsuit and the Cielo Arbitration.

77.     Hereinafter the matters referenced in **Exhibits 13, 14**, and **15** to this Complaint will collectively be referred to as the "Actions".

78.     Upon information and belief, the damages alleged at Cielo I in the Actions and matters referenced in this Complaint began occurring sometime before September 2016.

79.     Upon information and belief, the damages alleged at Cielo I in the Actions and matters referenced in this Complaint began occurring shortly after February 4, 2016.

80.     Upon information and belief, the membrane seams of the roofs in question at the Cielo Apartment Complexes were heat applied, and this work was done by Viking and/or Benny's.

81.     Upon information and belief, the damages at the Cielo Apartment Complexes involve and/or arise out of at least in part mold damage.

82.     On October 29, 2019, ACIC sent a Reservations of Rights Letter to Viking. (*See* **Exhibit 16** attached to this Complaint - **Viking ROR Letter 10-29-2019**).

**83.**     On April 2, 2020, ACIC Sent a Declination of Coverage Letter to Benny's (*See* **Exhibit 17** attached to this Complaint – **Benny's Declination of Coverage Letter 4-2-2020**).

**84.**     On May 6, 2020, ACIC's attorney on behalf of ACIC sent a Supplemental Reservations of Right Letter to Viking. (*See* **Exhibit 18** attached to this Complaint - *Supplemental Reservations of Right Letter to Viking 5-6-2020*).

## V.     CLAIMS AND CAUSES OF ACTION

**85.**     This is an action for declaratory judgment pursuant to sections 2201 and 2202 of Title 28 of the United States Code, and Federal Rule of Civil Procedure 57.

**86.**     The purpose of this declaratory judgment action is to determine questions of actual controversy between the Parties to this action, and to obtain a declaration of the rights and other legal relations of ACIC and the Parties to this action.

**87.**     The ACIC Policies referenced above do not provide coverage for any of the claims asserted against Viking and Benny's, or any other party, in the Actions and matters referenced in this Complaint pertaining to the Cielo Apartment Complexes pursuant to the Roofing Limitation Endorsements in the ACIC Policies issued to Viking and Benny's because the membrane seams of the roofs in question at the Cielo Apartment Complexes were heat applied.

**88.**     The ACIC Policies referenced above do not provide coverage for any of the claims asserted against Viking and Benny's, or any other party, in the

Actions and matters referenced in this Complaint pertaining to the Cielo Apartment Complexes pursuant to the Mold Exclusions in the ACIC Policies issued to Viking and Benny's because the damages at the Cielo Apartment Complexes involve and/or arise out of at least in part mold damage.

89.    Based on the "your work" and "your product" exclusions in the ACIC policies issued to Viking and Benny's there is no indemnity owed to either Viking or Benny's, or any other party, by ACIC for the repair and replacement of work done by Viking and Benny's at the Cielo Apartment Complexes.

90.    All of the ACIC Policies referenced above that were issued in or after September 2016 do not provide coverage for the claims referenced in the Actions and matters above at the Cielo Apartment Complexes pursuant to AGL-131 03-13, the CLAIMS IN PROGRESS exclusion, which is included in all of the ACIC Policies referenced above issued in or after September 2016, because the applicable damages alleged in the Actions and matters referenced in this Complaint began occurring sometime before September 2016.

91.    ACIC also incorporates by reference its claims positions set forth in **Exhibits 16, 17**, and **18** to this Complaint for Declaratory Judgment.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff ACIC respectfully requests that this Court adjudicate the rights and responsibilities of the Parties with respect to the subject ACIC Policies in the Actions and matters referenced in this Complaint pertaining

to the Cielo Apartment Complexes, and further asks the Court for the following relief:

1)      Plaintiff ACIC seeks a declaration that ACIC owes no duty to defend Viking and/or Benny's and/or any other party in the Actions and matters referenced in this Complaint.

2)      Plaintiff ACIC also seeks a declaration that ACIC has no duty to pay any indemnity arising out of any of the claims in the Actions and matters referenced in this Complaint pertaining to the Cielo Apartment Complexes.

3)      Plaintiff ACIC also seeks a declaration that none of the ACIC Policies referenced above provide any coverage for any of the claims asserted against Viking and Benny's, or any other party, in the Actions and matters referenced in this Complaint pertaining to the Cielo Apartment Complexes pursuant to the Roofing Limitation Endorsements contained in the ACIC Policies issued to Viking and Benny's.

4)      Plaintiff ACIC also seeks a declaration that none of the ACIC Policies referenced above provide any coverage for any of the claims asserted against Viking and Benny's, or any other party, in the Actions and matters referenced in this Complaint pertaining to the Cielo Apartment Complexes pursuant to the Mold Exclusions contained in the ACIC Policies issued to Viking and Benny's.

5)      Plaintiff ACIC also seeks a declaration that there is no coverage for any of the claims referenced in the Actions and matters above at the Cielo

Apartment Complexes under ACIC policy L072001128 issued to Benny's with a policy period 5/15/2013 to 5/15/2014 because there was not an occurrence during the policy period of this policy.

6)      Plaintiff ACIC also seeks a declaration that there is no coverage for any of the claims referenced in the Actions and matters above at the Cielo Apartment Complexes under the ACIC policies issued to Benny's, policy numbers L072001453 (policy period 5/15/2016 to 5/15/2017); L072001453-1 (policy period 5/15/2017 to 5/15/2018); L072001453-2 (policy period 5/15/2018 to 5/15/2019); and L072001453-3 (policy period 5/15/2019 to 5/15/2020), because all of these policies contain AGL-131 03-13, the exclusion for claims in process, and the applicable damages alleged in the Actions and matters referenced in this Complaint at the Cielo Apartment Complexes had already begun to occur prior to the policy periods of these policies.

7)      Plaintiff ACIC also seeks a declaration that there is no coverage for any of the claims referenced in the Actions and matters above at the Cielo Apartment Complexes under the ACIC policies issued to Viking, policy numbers L072001268-2 (policy period 8/01/2016 to 8/01/2017); L072001498 (policy period 9/08/2016 to 9/08/2017); and L072001498-1 (policy period 9/08/2017 to 9/08/2018), because all of these policies contain AGL-131 03-13, the exclusion for claims in process, and the applicable damages alleged in the Actions and matters referenced in this Complaint at the Cielo Apartment Complexes had already begun to occur prior to the policy periods of these policies.

**8)**     Plaintiff ACIC also seeks a declaration that there is no coverage for Viking for any of the claims referenced in the Actions and matters above at the Cielo Apartment Complexes under the ACIC policies issued to Viking because the only ACIC policies issued to Viking where there was potentially an occurrence and where the exclusion for claims in process would not apply, contained an exclusion for the work of subcontractors.

**9)**     Plaintiff ACIC also seeks a declaration ACIC shall have no obligation to pay any judgment obtained against Viking and/or Benny's, or any other party, based on the allegations and causes of action set forth in the Actions and matters referenced in this Complaint and pertaining to the Cielo Apartment Complexes.

**10)**     Plaintiff ACIC also requests such other and further relief to Plaintiff ACIC as the Court deems just and equitable.

**MEAGHER + GEER**

Dated: May 20, 2020          *s/ Aaron M. Simon*
                             Aaron M. Simon (#0331132)
                             Meagher + Geer, PLLP
                             33 South Sixth Street
                             Suite 4400
                             Minneapolis, MN 55402
                             Phone (612) 337-9658
                             Fax (612) 877-3058
                             asimon@meagher.com
                             ***Attorneys for Plaintiff Atlantic Casualty Insurance Company***